May it please the Court, my name is Jonathan Milling and I represent Dorothy Anderson in this appeal taken from the District Court here in South Carolina. Your Honors, this is a case that is essentially about the breadth of the conduct of Ms. Anderson and the appropriate sentence for that criminal conduct. Ms. Anderson went to trial in February of last year on 19 counts of submitting false income tax returns or false claims to the United States government, one count of embezzlement of government funds, and one count of aggravated identity theft. She was convicted of 18 of those 19 counts of submitting false claims to the government and also of the other two counts, the embezzlement and the aggravated identity theft. Your Honors, the first claim that Ms. Anderson raises in this appeal is whether or not there was sufficient evidence to establish her guilt or her conviction on four of those counts of submitting false claims to the United States government. Now the government during the trial of this case submitted testimony of 15 of the 19 individuals who were alleged to have been victims or have their personal identifiers utilized in the submission of the false income tax returns. They did not, however, submit any testimony, evidence, or other information regarding the falsity of counts 3, 9, 15, or 19. There is, in fact, Your Honor, is a complete absence of any evidence or proof that with respect to those four counts, Ms. Anderson didn't do it properly, didn't have the authority that those returns to the United States government were valid. Those returns did not contain accurate information. Based upon that, Your Honors, I would submit that there is an absence of evidence from which a reasonable jury could or should have found her guilty on those four counts. Now, does it have an impact, those four counts, by and of itself, on the sentencing of this case? It does not, but if we look at what impact four counts of conviction would have upon an individual, right off the bat we... Well, let me just... It seems to me you're arguing that the government in carrying its burden has to submit evidence in a specific form. Your Honor, I'm not submitting or suggesting that they have to submit a specific form, but I think they've got to have some sort of evidence to establish that these claims were false. There were tax returns underlying the four counts. Well, there were tax returns. Those tax returns were, in fact, submitted, Your Honor, but there was no evidence that those returns contained false information on them. The tax returns were very much like those in the counts for which specific witnesses testified as to falsity. And they identified the Anderson Tax Service as the preparer, and then they had the tax identification number on them, and they had the inclusion of the routing number. So if you had those pieces of evidence now, there's nothing that says the government can't submit circumstantial evidence. It doesn't have to actually have a specific witness. It can submit circumstantial evidence, and if you don't take the stand and rebut that evidence, you have a risk that the jury's going to find the government carried its burden. Well, and I think that there's always a risk when the defendant doesn't take the stand as to whether or not they could have benefited from that in rebutting some of the evidence. But our position in this argument, if you will, is that the government failed to establish that the names or the Social Security numbers were not submitted without the authority of the tax individual, that the addresses of the defendants somehow contained false information. There are really four different… Did you put on evidence to that effect? Did I? That they were submitted with the consent, that they were accurate tax returns, that they were filed and processed in an honest way? Well, Your Honor, I wasn't trial counsel. I was only appointed for the appeal, but there's no evidence in the record that trial counsel did submit any evidence of that kind. There was one witness… Wouldn't that have been a good idea? I think that trial counsel probably could have benefited from that. Well, if the evidence was there to submit. Yes, Your Honor. If the evidence was there to submit, it would have been submitted. And, Your Honor, I would submit that the essential defense which was presented in this case was that instead of Ms. Dorothy Anderson being the individual who actually prepared these tax returns and submitted them, that there was an individual by the name of Ms. Tamika Davis, as I recall, who was taken into Ms. Anderson's home and that she, in fact, was paid, I think, $300 a week. What about the inclusion of the routing number? Well, I think that that certainly is information that the money was to have been deposited into an account controlled by Ms. Anderson. And that is something which is consistent amongst each of these tax returns, as well as the tax preparer identification numbers, the PETIN and I think it's the TIPIN, both allocated to deal Anderson Tax Services. But we would submit, Your Honor, that without evidence establishing that the core returns in question here contained false, fictitious, or otherwise fraudulent information. But there was evidence. What you're objecting to is the admission of circumstantial evidence. And I don't know the rule that prohibits that. Well, and there's not a rule that prohibits it. But I think in looking at judgment of acquittal, it's our obligation to look whether or not there was sufficient evidence from which a reasonable jury would have found her guilty. Don't you think that given the difficulty of mounting a sufficiency challenge when we draw inferences in favor of the government, that that's probably not as good a compelling argument as your sentencing argument? Yes, Your Honor. And I will directly move into that sentencing argument and start with the argument dealing with the two-level enhancement, which relates to the number of victims in this particular case. Before you do so, I at least want to understand at least how this evidence was put in. Foundational-wise, in terms of the foundation, I take it there was an agent? There was, Your Honor. Who testified? Yes, sir. And his testimony simply indicated these are the tax records which were submitted? Yes, sir. And they look just like the others? Yes, sir. They have the routing number of the others? Yes, sir. And therefore, the jury, along with the other similarities, can now infer they are unauthorized? That's the government's position. I'm not sure I follow that. Judge Wilkerson has asked about you putting on evidence, but the burdens on the government to prove those, was it an element of the offense that they were unauthorized? The elements of the offense are that they were false or fictitious. And otherwise, I think that there are a number of different ways that they could have proven. Can you authorize a false or fictitious tax return? I think that if they were in cahoots with one another, they could have. They could have both been intending to defraud the government by submitting the false claims. And the inference of falsity would arise from the government's perspective by virtue of the fact they look just like the other ones, and therefore, you have a pattern of doing this. Yes, sir. And how long had she been doing this? This was for the tax year of 2007. Returns were submitted on or about April 15, 2008. I suppose they could have pulled some forms up from the previous years and put those in, too. I believe she didn't. They didn't look like that. Well, Your Honor, I don't believe that the evidence presented that she received her taxpayer filing numbers for the previous years. I think that she had just received it for 2007. I think that was the first time. Your Honor, if we look at the number of victims enhancement, our position, as we've outlined in our brief, is that the United States government is the singular and only victim that properly should have been classified in this particular case. We look at the first group of counts for the sentencing, and it's clear that whether it's submitting false claims to the government or the embezzlement of government funds, the government, the United States government, is the victim of those funds. Now, they are the only party that has a direct loss in this particular case. If you look at the commentary, there is a provision where if the use of a means of identification is utilized, the definition of victim is expanded to include individuals whose means of identification has been utilized to perpetuate that fraud upon the government. And so we do have that initial clause which authorizes the expanded definition of victim in this case. But because Ms. Anderson was also convicted of aggravated identity fraud, 1028A, the comments to Section 2B1.6 specifically provide that you're not to use an enhancement or a specific offense characteristic which involves the use of a means of identification in connection or in conjunction with the sentence because that's already taken into account in the 1028A 24-month mandatory consecutive sentence. The Fourth Circuit does not have any cases specifically addressing this. The question I have is that 2B1.6 referred to, it says do not apply 2B1.1B11C. And as I understand it, the provision that was applied was 2B1.1B2A. Yes, sir. And I'm not sure that 2B1.6 includes a prohibition against the application of 2B1.1B2A. Well, and Your Honor, I would just respond generally that those are very different provisions. They are very different provisions, but I don't believe that the comments to 2B1.6 have any specific restriction or prohibition as to how under 2B1.1 it's to be applied. Now certainly the use of What I was asking you is if there's a specific prohibition against the application of 2B1.1B11C and there's no specific prohibition against 2B1.1B2A, then why was it erroneous for the district court to apply the latter provision, which speaks to the number of victims. The provision you were talking about spoke to the nature of the crime and that's where the danger of double-counting was. The danger of double-counting wasn't with respect to the number of victims. The danger of double-counting was with respect to the aggravated nature of the crime, wasn't it? Well, and the way that this crime was perpetuated, and again this is where the guidelines get into the specific offense characteristics, and I see that I'm out of time. If I could just briefly respond to that. You reserved a whole lot of time for rebuttal, but go ahead. Yes, sir. And if that's your wish, I'll just respond to the government's argument in that regard. That's fine. Thank you, Your Honor. Ms. Shelling, I'm happy to hear from you. My name is Jamie Shelling, and I'm here for the government and United States v. Dorothy Anderson. As Your Honor's pointed out, the jury's resolution of all the evidence that conflicts in credibility determinations must be given deference, and as this court mentioned earlier, the convictions on Counts 4 were supported by circumstantial evidence. This court has already ruled that a jury's verdict may rely entirely on circumstantial evidence and still be sufficient. In this case, Count 4 was supported by substantial circumstantial evidence, as noted by Judge Wynn's point. He said that, yeah, you can rely on circumstantial evidence. It just wasn't enough here. The evidence here demonstrated a pattern. As Your Honor's pointed out, the PTIN, the tax preparers, the bank routing number were all the same. The jury did hear evidence that this was the first time Ms. Anderson had ever filed as a tax preparer, and there was no evidence before the jury that Ms. Anderson Other tax returns reference these four. Yes. Well, the tax returns were submitted for the same bank account number as 5, 11, 12, 13, 14, and 16, those counts. But my question is more, are the tax returns separate filings, or were they all submitted as one? They're separate filings. So they're separate, and each one is a separate offense. Yes. And to prove this separate offense, you show that another offense has occurred, and then there's another action that occurred, a document, and it looks like the first one. But there's no testimony, as you had in all of the others, that it was unauthorized. No testimony that anything on these particular four were, in fact, false. I believe the jury could rely on the fact that the pattern You've got a burden to prove first, and the burden is to establish the elements that this is false, and you've got to infer falsity. You need some evidence that those four are, in fact, false. Let me ask you a question. Could they have been correct? I mean, what says they weren't correct? Well, there's two things. First, the tax refunds went to Dorothy Anderson Ministries, a completely different business. Is that illegal? No, it's not, but she did have it. Is it a falsity? No, Your Honor. The second, the fact would be that Tamika Davis, the defense was that another woman had prepared these taxes. The defense wasn't that they were not false. It was that, basically, the dog ate my homework. Well, the jury found there was no dog. Where did that evidence come from, the dog ate my homework? That evidence came through the first investigator that testified, and it was based on That's not the witness. Yes. That's not the defense witness. Oh, I'm sorry. It came through two witnesses. It came through the first, through the investigator, and second, through the daughter of the woman, through the daughter of the defendant. So, by both sides, evidence about Tamika Davis. That shows the falsity of her working for her, but how does that establish the falsity of those four tax returns? I believe the jury could find that the pattern, that the rest of the tax returns were supported by witnesses' testimony, that nothing, I mean, besides the name. I want to make sure, one last thing, I want to make sure I understand this. So, anything that looked like those first ones could be introduced, and you could infer guilt. In fact, you only needed to put on one witness to the first one, right? Just do one, and then do a hundred more that looked like it and go home. Why did you waste time? I think it would be difficult to show a pattern through one person, and I'm not sure where the line… What do you mean? So, you needed the testimony to do the first one? I think that the testimony of the other witnesses, of the 14 other witnesses that said, these were filed in my name, I do not know this woman, or that… They established theirs. They established those. I'm trying to understand what, to prove the first one, did you need that witness? To prove the falsity, yes. I think that in order to demonstrate a pattern of false returns, that you would have to show, through some means, that there was falsity. Your point is that, not just for one, but for a great many tax returns, there was specific testimony. Yes. And then the remaining three or four counts were strikingly similar… Yes. …in unique details to the counts for which specific testimony was introduced, and that this was circumstantial evidence upon which the jury could rely. Yes, Your Honor. Judge Wynn's hypothetical, it's a good one, but it's a bit different from what happened here, and I agree with him that if we were presented with that case, it would be troubling. Yes, Your Honor. And you wouldn't put on that case. But my point goes more to establishing the element of falsity and how it's done here, and to simply say something is a scheme because you've proven a bunch of things happen, and then you bring something else that looks like it. I'm wondering how this comes out to play. I'm thinking of 404-type evidence, propensity and things of that nature. Would we allow someone to say, you know, bring this in because it looks like something else, or would we say it's more prejudicial than not? And that's not to establish guilt. That has a whole different purpose, and yet this is to establish guilt. And it must have been terribly important for you to have those four because it looks like to me she could have gotten this sentence just about with the others. She could have gotten this sentence without it. I don't get it. I mean, why would you? You've got those four, and there must have been a reason you didn't have the witnesses. The reason that the witnesses weren't there as discussed outside of the jury's hearing and then also in front of the jury was they were either unavailable or sick, and there were, I believe, maybe two that weren't located. I think my last question is how many witnesses did you need to get your scheme? I think that would depend on each case. In this case. Tell me about this case. Tell me how many of these witnesses. When was the scheme established? Did you need all 15, or was it at two, three, four? When was the scheme established? You argue. I think it is very helpful that it is more than half here by a good bit. Okay. Or 15. Yes. We have 15. And then if you have 100 more returns, you've already established this guilt. They're guilty already of the other 100 because the scheme is, why does it end here? Because the facts end here? The facts end here, yes, Your Honor. As far as the argument for issue number two, as the Sixth Circuit has held in United States v. Lyles, the defendant's interpretation of comment 2B1.6 is far broader than either reason or precedent would permit. As the analysis of the sentencing guidelines begins with the plain language of the comment, which, as Your Honors have already pointed out, plainly states that it punishes the transfer, possession, or use of the means of identification. As the Sixth Circuit and the Tenth Circuit have both distinguished already, the number of victims affects the impact and is not double-counting for giving credit for the same act again, even though they are defined by the same thing. It punishes the impact of the crime rather than just the act. I don't understand those other circuits. They talk about there's a prohibition on the application of 2B1.1B11C. Yes, and this Court has already held that also in United States v. Wallace, that it would be double-counting for a court to, and I believe Wallace held that a court improperly double-counted because they had given a two-point enhancement for 2B11C. I think it was 10 at the time, but 2B11C. And as the comment went… The provision here was there wasn't any application of B11C. There was not, no, Your Honor. This was B2A. This was B2A. I believe the defense's argument is that because of the definition of victims, it somehow falls under that. But as this Court has ruled in Hampton, double-counting is presumed to be permissible unless specifically stated. The specific prohibition in 2B1.6 is for a specific enhancement in the guidelines and does not… I don't believe there's a circuit yet that has held that it is a bar for everything. I believe the first circuit in Sharpka said that 2B1.6 applies to certain enhancements but not all. Right. If the court had imposed enhancement under… It precludes application of a two-level enhancement under B10C1. Yes. This is very hard to follow. Yes. It's a lot of comments and notes. Here, the legislative intent as indicated by the supplemental appendix C, Amendment 677, is to void unwarranted double-counting. Here, you do not have unwarranted double-counting. You have counting for two different things, the impact of a crime and the act, both by the plain language and by the history of this comment. The counting of victims is clearly permissible. In these tax cases with respect to victimhood, is it fair to count the taxpayers as victims in addition to the government? One of the issues with this case specifically is they were victims both by – well, they were victims in the sense that you just mentioned the government was relieved of some of its money, but they also were victims because their identities, their social security numbers were used without their permission. None of these returns, the false returns were not filed with the – the taxpayers were not co-conspirators in the scheme, basically. Correct. And as long as it was done – as long as their personal identifying information was stolen and co-opted without their permission, it's fair to see them as a victim. Yes, Your Honor. If Your Honors have any further questions? Well, I want to – I know we are limited to the facts here, but I'm still a little disturbed about these false returns. What's similar on it? You've got a tax preparer number and a routing number. I'm looking at one of the exhibits now. And what's similar with the others? So it's the same preparer, the bank routing number. The PTIN is the individual number so that the bank preparers don't have to use their social security numbers on each of the forms. And then those are – and those all went into account 2213, which was Dorothy Anderson Ministries. And that bank routing number, 2213, and all the rest of the information, is identical to counts 5, 11, 12, 13, 14, and 16. And the jury did hear testimony on each of those that the person did not – on each of the ones I just named, outside of those four, that they were false in the sense that they weren't allowed to – they were not – the information on them was false and they were filed without permission. And additionally, some of those people were even prisoners who had been in prison. Specific testimony with respect to those other returns in the form of taxpayer testimony or expert testimony or what was – Taxpayer, both. Taxpayer testimony and then the investigator testified generally. When you said the information is false, you mean the routing number is false? No, the routing number is Dorothy Anderson – I mean, it's Dorothy Anderson's routing number. What I'm asking is on the four, is there anything on those forms that in and of themselves indicate it's false based upon – I mean, is there something here that is false? I can understand a scheme. If you're telling me it's going to a routing number that's false and you've used that routing number on every other one there or the tax preparer had something that's false there in terms of how it was done and it's false on every one, but I'm asking on these four, is there anything on these four, if you just had that and nothing else, that would indicate it's false? The jury did not hear evidence that anything on those forms specifically, the supporting information, the income, or the number of dependents was false. They did not hear testimony of that. Because nothing has been – no evidence has been shown that anything on these four is in fact false because there's nothing per se false on those forms. No, it's entirely – that portion is entirely circumstantial evidence that the others were false and it is part of the scheme. So it's not the proof of the false information because I'm thinking in terms of general schemes, you're actually talking about the act itself. So the act that is – if this is false, based upon something else that looks like it is false too, what makes this false happens to be the fact that somebody didn't authorize it or didn't get it, right? But that somebody didn't testify. They didn't get it or they – or the information on it is false, either one. All right. I'm going to probably not be able to be persuaded on this, but I'll let you go ahead. Maybe – I think maybe I'm unclear too. I thought that the claims were false not because of – that the routing number was false, the bank account was false, et cetera, but because the identities were stolen and that they were not – they were falsely attributed to the people in question. Yes. Not the bank routing number, the tax ID number, the funds from the false returns went into the same account as the funds from the four where there was no specific supporting. So it's not the facial falsity. It's the unauthorized nature of it and the inferences to be drawn from the fact that all of that money went to the same person, the same account, the same place. Yes, Your Honor. If I misspoke earlier, your understanding is – No, I was thinking maybe I was unclear on that point too. I think Judge Duncan has phrased it right, but I think the perspective is just different than to simply say somebody else did something. What's missing here is that in every instance the routing number is the same and nothing false there, as I said, the taxpayer. And those are the similarities you pointed to. That's in the testimony. There's no testimony that anybody here did not authorize these. That's the problem I'm having. But you've got plenty of testimony on the others because everyone is a separate offense, and it's because it's not the substance of it. If it was that the routing number was wrong on this one and you've got others that show a scheme of using that wrong of that same thing, I'd follow that. But I'm having difficulty following bringing in a piece of paper that there's nothing false at all about it. It says, well, this looks just like the rest of them, so she's guilty of this. Yes, Your Honor. But you had 15, so I don't get it. I still don't get why you needed the four. Two additional points. The first one with the caveat that I understand your point is the government's burden of proof. I think that the jury did and could also consider the fact that Ms. Anderson's defense was, one, she didn't file any of these, that this Tamika Davis filed them, and there was no evidence. That you have to prove this beyond a reasonable doubt. Yes, and there was no evidence. She didn't testify. She didn't testify. She did put up testimony, and they did make argument. And I think that the jury could consider the fact that there was the evidence that these were so similar to the others that there was no evidence whatsoever that she had ever filed a correct income tax. I think I understand your point. I think there's very adequate evidence that this looks bad. Yes, Your Honor. I just don't think you've proven it beyond a reasonable doubt. Yes, Your Honor. It's a question really of whether juries can draw inferences, isn't it? Yes, Your Honor. And if juries can't draw inferences from this similarity of what was done here and what was done in the returns for which specific testimony was introduced, we're kind of in a bad way. Yes, Your Honor. I don't disagree with that. But I do believe an inference must be based on something other than another inference on top of an inference. And that's kind of what you've got here. We could reach that conclusion in every case that why don't we just go ahead and convict them because it looks just like the same thing you did here. This is just a piece of paper for which all you needed was a witness to take the stand and say, I didn't authorize it. It's not an inference, though. It's established. The 15 other cases, it's not influential. Those are actually. Those are clearly established by direct testimony. Yes, Your Honor. And I don't disagree that those 15 have that established. What I disagree with is it's not established that anybody says anything is wrong on those four. That's not established. You're going to have to go and reach somewhere to get that. You're going to have to infer that, in fact, someone didn't authorize it, and infer that it looks like something else and a whole bunch of inference. You're going to have to come to get that. It's a dangerous thing. I think it has tremendous implications for other cases. If you can do this, then it has tremendous implications. Thank you. Thank you, Your Honor. Your Honor, may it please the Court. Turning to the 2B1.6 and the victim enhancement, I went back during opposing counsel's argument and wanted to make sure that I was correct in my review of the specific language utilized by the sentencing commission in their comments. In comment 2 to 2B1.6, it says, If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, which is what we've got here, do not apply any specific offense characteristic for the transfer, possession, or use of a means of identification when determining the sentence for the underlying offense. I think it's important that we look at that specific language used by the sentencing commission. They didn't say don't use, in 2B1.1, the 11 enhancement. They said don't use any enhancement, which involves the use, possession, or transfer of a means of identification. And I think it's important to go back. What about the other circuits on this point? Well, and Your Honor, admittedly, I have not had a chance to completely think through that because those cases were the supplementations of authority, which I had an opportunity to look at yesterday. You have a number of other circuits against you. Well, I've got the Sixth and the Tenth Circuit, which in a footnote in the Tenth Circuit in the Mantel case, they say you don't use it this way. The Lyles case... No, I don't see the double-counting problem here because the double-counting problem is with a specific offense characteristic that goes to the essence or the nature of the crime. And that seems to me the whole idea is that, you know, you don't want to have a two-year mandatory minimum under 2B1.6 and then pile on top of that something which speaks to the aggravated nature of a crime for which the mandatory minimum has already been applied. Yes, sir. And so that makes perfect sense to me. But then when you talk about the number of victims, I can't see where that's been counted before. And it makes a difference to me because that's the logic of it, as far as I can see, is that the number of victims swings free and clear from the nature of the offense and the desire not to have a specific offense characteristic on the nature of the offense. But, and I think this is what motivated the other circuits and the Sentencing Commission when it specifically targets 2B1.1B11C and the omission of 2B1.1B2A, we have to attribute some significance to that. Well, and Your Honor, I would just respectfully submit that when we look at the specific facts involved in this case, we cannot escape how everything is intertwined. The submission of the false income tax returns, that's not what drives the 1028A because that is not one of the underlying felony offenses that can give rise to the 1028A. It's the embezzlement charge, in this case, that gives rise to the 1028A. Well, I've indicated some skepticism about your argument in terms of the plain language of the guidelines, but in addition, we would be creating a circuit split. And normally, in cases like, in certain areas of federal law, where all things being equal, I don't think they are equal here in view of plain language, but all things being equal, you want to avoid a circuit split. Well, and Your Honor, I don't know that I would necessarily see it as a true circuit split. Certainly, the Fourth Circuit would be taking a position different from that which the Tenth Circuit and the Sixth Circuit have taken in their respective cases. Well, why wouldn't that be a circuit split? Well, because I think that when you're looking at something like this, when you're dealing with specific offense characteristics, you've got to look at the specific facts of each and every underlying case to determine whether or not, in this case, in Ms. Anderson's case, the application of the additional victim enhancement was appropriate because what she did in her criminal conduct was already covered. The means of identification aspect was already covered by her 1028A. Wouldn't the 2B1.6, two-year mandatory minimum, she receive that? Yes, sir. And wouldn't that have been applied whether there was one victim or two victims or three? I mean, here, there are 19, but the two-year mandatory minimum would have applied had there only been three. And given that, it seems to me that an enhancement for the number of victims is not double counting at all because the two-year mandatory minimum, which is the single counting, applied irrespective of the number of victims. I certainly see and appreciate your reasoning in that regard, Your Honor. I would just submit looking at a plain reading of the commentary to 2B1.6 that there is no specific prohibition or limitation to... But there's no, I mean, both as a matter of logic and circuit precedent and plain, I mean, other circuits and plain language and everything, I just don't think your argument holds up. Yes, sir, Your Honor. Is there anything further? Your Honor, I would just submit, and I'll rest on my brief on the other two, Isha Allen case or a lien case was argued before the Supreme Court in January. We don't have an opinion on that. I think that could have an impact, but I would just respectfully submit that we would request that Ms. Anderson's sentence be vacated and remanded for re-sentence. Thank you, Your Honor. I see that you're court-appointed, and I certainly do want to thank you. I think you've done a commendable job. I appreciate it, and I'd like to come down and greet counsel and move into our next case.
judges: J. Harvie Wilkinson III, Allyson K. Duncan, James A. Wynn Jr.